James L. Chipokas, Cedar Rapids, for appellant.

Margaret T. Lainson of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Respondent George J. Baculis (George) filed an application for interpretation of decree and determination of interest, requesting that the district court determine whether petitioner Stamatina S. Baculis (Tina) was entitled to prejudgment interest on her property distribution award computed from the date she filed her original petition for dissolution of marriage. The district court ruled adversely to Tina, stating that interest would accrue from the date of entry of the dissolution decree. She now appeals. We affirm.

I. *Background facts and proceedings.* Tina and George were married on July 10, 1965. At the time of their marriage, the parties owned an undeveloped lot located on North Summit Street in Iowa City. The parties subsequently acquired other adjacent real estate. All of the lots were acquired or purchased from George's father.

The couple established their marital homestead at 1011 North Summit. On Jan-

In re The MARRIAGE OF Stamatina S. BACULIS and George J. Baculis,

Upon the Petition of Stamatina S. Baculis, Appellant,

And Concerning George J. Baculis, Appellee.

No. 87–1495.

Supreme Court of Iowa.

Oct. 19, 1988.

uary 14, 1983, Tina filed a petition for dissolution. At that time, the homestead had a fair market value of approximately $65,000 and an outstanding mortgage of approximately $32,000. Approximately $1,200 in property taxes were owed on the real estate.

The remaining lots were located on the east side of North Summit Street and together encompassed approximately three acres. By the time Tina filed her petition for dissolution, there were located on these lots two houses, a six-unit apartment building, and an eight-unit apartment building. All of these structures were utilized as rental properties. The parties agreed that the approximate value of the four parcels totalled $400,000. The outstanding indebtedness on these parcels was approximately $73,000. Property tax totalling approximately $9,000 was owed on this real estate. In October 1983, while the dissolution action was pending, George and Tina established an agency agreement with the Hills Bank & Trust Company for the management of the rental properties.

In addition to the real estate, the major assets of the marriage included seven vehicles and various pieces of maintenance equipment. During the course of their marriage, George and Tina also accumulated a substantial indebtedness exceeding $100,000.

Evidence was admitted during the dissolution trial concerning the marketability and the divisibility of the rental properties. The testimony indicated that several of the rental properties shared joint plumbing, sewer and electrical lines. Furthermore, the evidence showed that the driveways and parking lots for the buildings were constructed without reference to the property lines. In short, the evidence established that the separate properties were maintained and operated as a single unit and that division of the properties along existing lot lines could not be accomplished without substantial impairment to the overall value of the land.

The parties agreed that Tina would be awarded the marital residence situated at 1011 North Summit. It was George's position that the remaining four lots were so intertwined that they could not be separated. Therefore, George proposed that he be awarded the remaining real estate and Tina be awarded a $100,000 judgment lien against the property. Tina contended that it was possible to divide the property and that she should be awarded two of the rental buildings.

A decree of dissolution was entered on October 15, 1985. It was noted in the decree that the property division plan proposed by Tina divided the rental units and other property more or less equally. The court found, however, that actually separating the rental properties could not be done without hampering their future marketability or substantially impairing their current value. Thus, the district court, Judge Paul J. Kilburg presiding, found that "the best disposition of this property is to award the same to the respondent [George] and award the petitioner [Tina] a judgment lien against the property to equalize the net values awarded to each party."

After making its division of the real and personal property, as well as the debts of the parties, the court found that Tina was awarded a net equity of $5,000. George was awarded a net equity of $290,000. In an effort to "equalize" the awards, the court awarded Tina a judgment against George of $140,000 which was to be a lien against the realty. The decree set forth a ten-year schedule for payment of this sum "with statutory interest." This decision was affirmed on appeal. *In re Marriage of Baculis*, 409 N.W.2d 715 (Iowa App. 1987) (table).

Subsequent to the court of appeals decision, a dispute arose between the parties as to the amount of the cash award, specifically the awarded interest. George contended that the award was for $140,000 plus interest at ten percent from the date of the decree, October 15, 1985. Tina, on the other hand, sought interest on the $140,000 judgment from the date she filed her petition, January 14, 1983. The claimed prejudgment interest, presumably allowed under Iowa Code section 535.3, totalled an additional $38,500.

On August 17, 1987, George filed an application for interpretation of decree and determination of interest in the district court. After hearing, the court issued its order denying Tina's demand for prejudgment interest, ruling that interest would accrue on the judgment from the date of the dissolution decree. Tina brings this appeal seeking review of the court's order.

II. *The Prejudgment Interest Statute, Iowa Code section 535.3.* At issue is whether Iowa Code section 535.3 applies to a monetary award as a part of the property distribution in a dissolution action. That section in part provides:

> Interest shall be allowed on all money due on judgments and decrees of courts at a rate of ten percent per year.... The interest shall accrue from the date of the commencement of the action.

Iowa Code § 535.3 (1985). Tina contends that the section is mandatory and the district court erred in not awarding interest on her $140,000 property award from the date she filed her petition.

In *Arnold v. Arnold*, 258 Iowa 850, 140 N.W.2d 874 (1966), we construed the predecessor of the current section which at that time simply stated in part, "Interest shall be allowed on all money due on judgments and decrees of courts at the rate of five cents on the hundred by the year ..." Iowa Code § 535.3 (1962). It was observed that "[i]t is at once apparent that this statute makes no distinction between judgments entered in law actions and those entered in equity cases. Furthermore, we find no basis for differentiation." *Arnold*, 258 Iowa at 854, 140 N.W.2d at 877. Based upon this observation, and the fact that Iowa courts had traditionally enforced monetary awards in divorce actions similar to judgments at law, we held in *Arnold* that "fixed awards of money for child support, alimony, and property settlement draw interest at five percent per annum from the date of judgment, or in the case of specified periodic payments from the date each payment becomes due and owing." *Id.* at 844–45, 140 N.W.2d at 877.

Tina contends that *Arnold* dictates that the court should apply section 535.3 *as amended* to this action in equity. Therefore, the $140,000 property settlement award in her dissolution action should draw interest from the date of the commencement of her action. George argues that *Arnold* is not controlling on that issue; rather, only the interest *rate* provided in section 535.3 is obligatory and equity courts should continue to exercise discretion in determining when interest should begin to accrue.

Section 535.3 was amended by the Sixty Eighth General Assembly. 1980 Iowa Acts ch. 1170, § 1. The amendment not only changed the interest rate, but also added the final sentence of that section, advancing the interest accrual date to the date the action was commenced. The amended section applied to all judgments entered of record after January 1, 1981. *Janda v. Iowa Indus. Hydraulics, Inc.*, 326 N.W.2d 339, 344 (Iowa 1982). Since the time of its amendment, we have not been called upon to determine whether the section applies to a monetary award as part of the property settlement in a dissolution action.

One of the primary purposes for the amendment to section 535.3 was to prevent persons obligated to pay money to another from profiting through delays in litigation. *Dillon v. City of Davenport*, 366 N.W.2d 918, 926 (Iowa 1985). The statute is intended to discourage delay in trials and appeals. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 169 (Iowa 1984); *Janda*, 326 N.W.2d at 344. In general, prejudgment interest is not awarded as a penalty, but rather it reflects the lost value of the use of the money awarded. *In re IBP Confidential Business Documents Litig.*, 755 F.2d 1300, 1320 (8th Cir.1985); *Glamann v. St. Paul Fire and Marine Ins. Co.*, 140 Wis.2d 640, 657, 412 N.W.2d 522, 529 (Ct.App.1987).

We have held that an award of interest under section 535.3 is obligatory on the district court, *Iowa State Commerce Comm'n v. Manilla Grain Terminal, Inc.*, 362 N.W.2d 562, 565 (Iowa 1985), and that interest should be awarded even where interest has not been requested. *Oskaloosa Food Prods. Corp. v. Aetna Casualty &*

*Sur.*, 337 N.W.2d 521, 523 (Iowa 1983). Nevertheless, appellate courts, including our own, have not applied section 535.3 mechanically in all circumstances, but have identified certain instances from which the coverage of the statute is excepted.

A. *Exceptions to awarding prejudgment interest.* "It is well settled in Iowa that prejudgment interest is not allowed on awards of punitive damages." *Peterson v. First Nat'l Bank of Iowa*, 423 N.W.2d 889, 890 (Iowa App.1988) citing *In re IBP Confidential Business Documents Litig.*, 755 F.2d 1300, 1319–20 (8th Cir.1985); *Midwest Management Corp. v. Stephens*, 353 N.W. 2d 76, 82 (Iowa 1984); *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 426 (Iowa 1977); *Dunshee v. Standard Oil Co.*, 152 Iowa 618, 631, 132 N.W. 371, 376 (1911). As the court stated in *IBP*:

> Although the statute on its face admits no exception for punitive damage awards, we cannot agree with this construction. Interest is compensation for the deprivation of the use of money. Punitive damages do not accrue, however, until they are awarded in a judgment. It would be anomalous indeed to compensate the plaintiff for the deprivation of the use of money to which he has no claim of right.

*In re IBP*, 755 F.2d at 1320.

Similarly, courts have refused to allow interest to accrue from the date of commencement of the action where damages are recovered for injuries that transpired after the action was filed. One court expressed its reservations as follows:

> The Court does not believe that § 535.3 will be construed in such a way as to permit recovery of interest from the time of the commencement of the action on expenses incurred after the action was commenced. To do so would result in unjust enrichment of the plaintiff, who would in effect begin to recover interest on his money before he had even spent it. This result cannot have been in the contemplation of the legislature that enacted the new statute.

*Sedco Int'l, S.A. v. Cory*, 522 F.Supp. 254, 331 (S.D.Iowa 1981), *aff'd* 683 F.2d 1201 (8th Cir.), *cert. denied* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). Indeed, we have since held that interest is not to be assessed on amounts owed on transactions that do not arise until after the litigation has commenced. *Rowen v. LeMars Mut. Ins. Co. of Iowa*, 347 N.W.2d 630, 641 (Iowa 1984). In such circumstances, interest is to be calculated from the date the transaction occurred or the amount was due. *Id.*

Furthermore, although *Arnold* stated that section 535.3 applies with equal force to both equity cases and actions at law, a more recent decision of this court has drawn a more careful distinction. In *Dillon v. City of Davenport*, 366 N.W.2d 918 (Iowa 1985), we excepted certain orders for specific performance from earning prejudgment interest under section 535.3. In *Dillon*, an employee of the city of Davenport brought suit to enforce an agreement settling his worker's compensation claim. The district court found for the employee and ordered the city to honor the settlement agreement that obligated the city to pay the employee $150,000. The court refused, however, to grant the employee's request for prejudgment interest under section 535.3. *Id.* at 920–21. On appeal, we affirmed, holding that the order for specific performance was not the equivalent of a money judgment as contemplated under section 535.3. In *Dillon* we explained:

> The instant judgment is not the equivalent of a money judgment. The decree only calls for specific performance of the contract to make a written contract settling a worker's compensation claim. Before this contract would become the equivalent of a money judgment, another condition must occur—the approval of the Industrial Commissioner pursuant to section 85.35. We cannot state with a degree of certainty that this will occur. Thus, we conclude that even if we liberally construe section 535.3, interest on this judgment and decree is not proper.

*Id.* at 927.

The legislature has recently added another exception to the statute. The Seventy Second General Assembly amended section

535.3 to add the following language: "This section does not apply to the award of interest for judgments and decrees subject to section 668.13." 1987 Iowa Acts ch. 157, § 1. Section 668.13, in turn, provides in part, "Interest awarded for future damages shall not begin to accrue until the date of entry of the judgment." Iowa Code § 668.13(4) (1987). Thus, the legislature has excepted future damage awards from the coverage of the prejudgment interest section.

Lastly, in *Balster v. State,* 360 N.W.2d 788, 790 (Iowa 1985), we held that section 25A.4 of the Iowa Tort Claims Act prohibited state liability for prejudgment interest. Relying on Iowa Code section 4.7,[1] we noted in *Balster* that the Tort Claims Act specifically addressed state liability for prejudgment interest, and thus, as a specific statute, it prevailed over the provisions of section 535.3 that addressed awards of prejudgment interest generally. *Balster,* 360 N.W.2d at 790.

■ B. *Section 535.3 and property distribution awards under section 598.-21(1).* We are persuaded by the above authorities and additional reasons hereafter stated that the portion of section 535.3 concerning prejudgment interest should not be construed to apply as a matter of course to property distribution awards in dissolution proceedings.

Like the specific performance action in *Dillon,* the property settlement to be effectuated here should not be considered the equivalent of a money judgment as contemplated under the statute. The major questioned assets of the marriage were the four rental properties located in Iowa City. In order to retain the full value of these assets, the court awarded George all four as a single unit and awarded Tina a judgment lien against those assets. Even though Tina was awarded a judgment lien of $140,-000, that award cannot be considered to be the equivalent of a money judgment as contemplated under section 535.3 because the award merely granted Tina a judgment lien against the value of property that, up to that point in time, she had already co-owned. *Cf. Dillon,* 366 N.W.2d at 927.

Furthermore, it cannot be said that Tina was deprived of the use of the property or its value during the pendency of the proceedings. While the dissolution action was pending, the rental properties were managed by Hills Bank & Trust Company. George and Tina were both parties to the agency agreement with the bank. Because she enjoyed equal access to the income generated by the rental properties, Tina was not deprived of the property until the dissolution decree was issued. Like an award for post-commencement injuries, the judgment lien was not due until the ownership of the property was formally divided in the decree. *Cf. Sedco,* 522 F.Supp. at 331; *Rowen,* 347 N.W.2d at 641. Like an award of punitive damages, Tina was not entitled to the judgment until it was rendered. *Cf. In re IBP,* 755 F.2d at 1320. It would amount to unjust enrichment in this case to allow Tina to collect interest on money that was not owed her until the judgment was rendered.

Further, by allowing interest to accrue on the property settlement from the date Tina commenced her action, we would frustrate the effort taken by the trial court to equitably distribute the assets of the marriage. Iowa Code section 598.21(1) mandates that every judgment of dissolution shall divide the property of the parties. That section further provides that courts "shall divide all property ... *equitably* between the parties ..." Iowa Code § 598.21(1) (1987) (emphasis added). The section then details the factors that courts are to consider in making property divisions. *Id.; see In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983) ("The distribution of the property of the parties should be that which is equitable under the circumstances after consideration of the criteria codified in Iowa Code section 598.-

---

1. Iowa Code section 4.7 provides:
   If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision.

21(1).").  The district court determined in this case that an approximately equal distribution would be equitable under the circumstances.  In an effort to equalize the awards, therefore, the court awarded George the rental real estate assets of the marriage, and awarded Tina a judgment lien of $140,000.  In the end George and Tina were awarded net property values of $150,000, and $145,000 respectively. Awarding interest on top of this result alters the net awards to $111,500, and $183,500 respectively.

Section 535.3 is a general statute addressing interest on judgments and decrees.  *Balster,* 360 N.W.2d at 790.  Section 598.21(1) is a specific statute providing for equitable distribution of marital property upon every judgment of annulment, dissolution or separate maintenance.  Iowa Code chapter 4 aids us in the construction of these statutes.  As noted earlier, "Iowa Code section 4.7 states the court should give effect to both statutes unless their provisions are irreconcilable, in which case the specific statute prevails as an exception to the general provision."  *Good v. Crouch,* 397 N.W.2d 757, 760 (Iowa 1986). "In interpreting statutes, we are not bound by the literal import of the words used if the manifest intent of the legislature is to the contrary."  *Wright v. City of Cedar Falls,* 424 N.W.2d 456, 458 (Iowa 1988).  In order to gauge this intent, "we are to consider the 'subject matter, effect, consequence, and the reason and spirit' of the statutes."  *Good,* 397 N.W.2d at 760, quoting *Doe v. Ray,* 251 N.W.2d 496, 504 (Iowa 1977).

The "reason and spirit" of the equitable distribution statute is illuminated by its application in the district court in this case. In the court's original opinion, Judge Kilburg stated that the judgment lien was awarded Tina in an effort to "equalize the net values awarded each party."  Upon application for interpretation of the decree, Judge Kilburg, once again presiding, stated in the final order that "it was the determination of the court at the time the decree was entered that interest would run from the date of the entry of the decree."  In other cases where the same trial judge was

called upon to construe a prior judgment or decree, we have said that "construction of its own decree by the trial court must be given great weight in determining the intent of the trial court."  *Thiele v. Whittenbaugh,* 291 N.W.2d 324, 329 (Iowa 1980) (citations omitted).  It is apparent in reading the two district court opinions that literal enforcement of the prejudgment interest portion of section 535.3 would frustrate the court's equitable distribution of marital assets.

We conclude that section 535.3 is a general statute and, in the present case, is in conflict with section 598.21(1), a specific statute for the disposition of marital property.  Therefore, the rule set out in Iowa Code section 4.7 applies, excepting the use of the prejudgment interest portion of section 535.3 in cases determining the equitable distribution of property under section 598.21(1). ·

III.  *Other jurisdictions.*  The result reached here is supported by authority in other jurisdictions.  *See generally,* Annotation, *Prejudgment Interest Awards in Divorce Cases,* 62 A.L.R. 4th 156 (1988).  Although few states have statutes similar in form to Iowa Code section 535.3, many mandate the result of the position taken here.  Minnesota, for example, allows prejudgment interest awards in all civil actions but, very importantly, excepts from that rule worker's compensation cases, punitive damage awards, future damage awards, and awards made in dissolution proceedings.  *Minn.Stat.* § 549.09 (1987);  *See Riley v. Riley,* 385 N.W.2d 883, 888 (Minn.Ct. App.1986).

Of those states which have statutes similar to the Iowa provision, only Michigan has tested its law in the context of a dissolution proceeding.  The Michigan courts have uniformly rejected awarding prejudgment interest in dissolution actions.  *Ashbrenner v. Ashbrenner,* 156 Mich.App. 373, 376, 401 N.W.2d 373, 375 (1986);  *Saber v. Saber,* 146 Mich.App. 108, 111, 379 N.W.2d 478, 480 (1985);  *Youmans v. Youmans,* 108 Mich.App. 597, 599, 310 N.W.2d 809, 810 (1981).  The Michigan statute that is similar to Iowa Code section 535.3 provides

in part that "[i]nterest shall be allowed on a money judgment recovered in a civil action ... [and] shall be calculated from the date of filing of the complaint...." Mich. Comp. Laws § 600.6013 (1987). In *Youmans,* the court held that an equitable real estate lien awarded in a divorce action was not a "money judgment" as contemplated under the Michigan act. *Youmans,* 108 Mich.App. at 599, 310 N.W.2d at 810. The court in *Saber* likewise concluded:

> Similarly, in a divorce action, the court does not compensate a party for loss but rather seeks an equitable distribution of property. To award interest from the date of the complaint, as mandated by [the Michigan prejudgment interest statute], would not effectuate the legislative purpose of compensating a plaintiff for a loss of use of the funds. Therefore, we find that a property distribution in a divorce judgment is not a money judgment within the meaning of [the act].

*Saber,* 146 Mich.App. at 112, 379 N.W.2d at 480. This reasoning is equally compelling to this case under Iowa Code section 535.3.

IV. *Disposition.* In *Arnold v. Arnold,* 258 Iowa 850, 140 N.W.2d 874 (1966), we held that fixed awards for property settlement in dissolution cases draw interest from the date of judgment. Although section 535.3 has been amended since that time to generally allow interest from the date an action is filed, both reason and authority dictate that the decision in *Arnold* should continue to apply in the case presented here. Trial courts in dissolution proceedings, sitting in equity, should retain the power to award interest according to the equitable principles required by Iowa Code section 598.21. We conclude the trial court correctly refused to award prejudgment interest on Tina's award. The case is affirmed.

AFFIRMED.